## The People of the State of Illinois, Defendant in Error, v. Frank Coit, Plaintiff in Error.

1. INTOXICATING LIQUORS, § 145*—*when questions in prosecution for selling in anti-saloon territory are for jury.* In a prosecution for selling liquor in anti-saloon territory, where the evidence for the State consisted chiefly of the testimony of two detectives, *held* that the determination of the credibility of the witnesses and the question of fact were the province of the jury and were settled by its verdict.

2. EVIDENCE, § 10*—*judicial notice of adoption by Danville of act providing for creation of board of election commissioners.* The court will take judicial notice of the fact that the City of Danville, Illinois, has adopted the act providing for the creation of a board of election commissioners for such city. (Hurd's Rev. St. 1917, ch. 46, art. 1, sec. 10, ¶ 164, J. & A. ¶ 4938.)

3. ELECTIONS, § 24*—*control of election commissioners over elections.* The act providing for the creation of boards of election commissioners in cities, towns and villages adopting the act gives them substantially absolute control over all elections within their respective jurisdictions.

4. INTOXICATING LIQUORS, § 5*—*what are duties, under Local Option Act, of election commissioners.* Under the provisions of the Local Option Act, all of the duties imposed upon the clerks of their respective political subdivisions which have not adopted the act creating boards of election commissioners devolve upon such boards where they exist.

5. INTOXICATING LIQUORS, § 152*—*what certificate is prima facie evidence that territory is anti-saloon.* The certificate provided for by section 7 of the Local Option Act (J. & A. ¶ 4643), relative to proof of the result of an election under such act, must be held to mean one executed by the board of election commissioners when such a board exists in the city wherein the election was held.

6. INTOXICATING LIQUORS, § 162*—*when conviction of selling will be reversed for failure of proof that territory was anti-saloon.* Where the certificate of the city clerk, admitted in a prosecution for selling liquor in anti-saloon territory to prove that the city had become territory of that character, was incompetent by reason of the fact that a board of election commissioners existed in the city and there was no other proof of the fact, the conviction cannot be sustained.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

The People v. Coit, 215 Ill. App. 574.

Error to the Circuit Court of Vermilion county; the Hon. AUGUSTUS A. PARTLOW, Judge, presiding. Heard in this court at the April term, 1919. Reversed and remanded. Opinion filed October 21, 1919.

ACTON & ACTON, for plaintiff in error.

JOHN H. LEWMAN, for defendant in error; I. R. CARTER, of counsel.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

The indictment in this case consists of twelve counts, the first eleven of which charge that Frank Coit, plaintiff in error, on different dates within the City of Danville, Vermilion county, Illinois, said City of Danville being anti-saloon territory unlawfully sold intoxicating liquor to one J. Holt in violation of what is known as the Local Option Act. The twelfth count charged him with keeping a common nuisance. The trial resulted in a verdict of guilty under each of the twelve counts and he was sentenced to pay a fine of $20 on each of the first eleven counts and one of $50 on the twelfth count. The evidence showed the plaintiff in error was the proprietor of a restaurant at No. 125 East Main street, Danville, Illinois, at which place soft drinks were also sold. He also owned a restaurant at Westville, Illinois, and divided his time between the two places. The evidence for the State consists chiefly of the testimony of two detectives hired by the mayor of the City of Danville to investigate violations of the act in that city. They testified that a clerk working in the restaurant by the name of "Frank" sold them bottles of beer in a back room, but that they never purchased any from plaintiff in error. Another witness by the name of Wallace testified that, at his request, plaintiff in error brought him whisky from Westville and that he paid the money therefor to plaintiff in error at his place of

business in Danville. Plaintiff in error denied that
he ever sold or kept for sale any intoxicating liquor
in his restaurant in Danville or that any was ever sold
by his clerk with his knowledge or consent. In regard
to selling the whisky to Wallace, he testified that on
several occasions Wallace requested him to get some
whisky for him when he went to Westville and that he
did so and Wallace paid him only what he had paid
for the same when he purchased it. The determina-
tion of the credibility of the witnesses and the question
of fact were the province of the jury and are settled
by its verdict.

In order to prove that the City of Danville was in
anti-saloon territory the following certificate was in-
troduced in evidence:

"Vermilion County, ss.
State of Illinois,

"I, the undersigned, Grace Barton, City Clerk in
and for said City of Danville, in the County and State
aforesaid, do hereby certify at a regular city election
for choosing officers, held in and for the City of Dan-
ville, in the County of Vermilion, and State of Illinois,
on the 17th day of April, A. D. 1917, the proposition
'Shall this City become Anti-Saloon Territory' was
duly submitted to the legal voters of said City of
Danville, and that the result of such vote cast upon
said proposition shows that the affirmative of said
proposition received the majority of the legal votes
cast at said election upon said proposition, and that
six thousand, one hundred and twenty-five (6,125) of
the legal voters, voting on the proposition, voted 'Yes'
and five thousand, eight hundred and ninety (5,890)
of the legal voters, voting on said proposition, voted
'No.'

"All of which appears from the records of the Board
of Election Commissioners of said City, certified to
the City Council of said City, on April 21, A. D. 1917,
and read at the regular meeting of said Council on
April 23,' A. D. 1917, and afterwards recorded by me
in a well bound book kept in my office; the same being

a part of the records of said city, now in my custody and keeping, and of which I am by law the official custodian.

"IN WITNESS WHEREOF, I have hereunto set my hand and seal of said city this 17th day of December, A. D. 1917.

GRACE BARTON,

"(SEAL)                                        City Clerk."

It is contended by plaintiff in error that the above is not such a certificate as is provided for in the Local Option Act because it was not executed by the Board of Election Commissioners of the City of Danville and for that reason was incompetent as evidence. The court will take judicial notice of the fact that the City of Danville had adopted the act providing for the creation of a board of election commissioners for said city. (Chapter 46, art. 1, sec. 10, ¶ 164, Hurd's Rev. St. 1917, J. & A. ¶ 4938.)

Section 1 of the Local Option Act (J. & A. ¶ 4637) provides among other things as follows: "The words and phrases mentioned in this section as used in this Act and in proceedings pursuant hereto shall, unless the same be inconsistent with the context, be construed as follows: * * *

" 'Clerk' shall mean, with reference to towns, cities and villages, the town, city or village clerk as the case may be; with reference to precincts in counties not under township organization, it shall mean the county clerk; and it shall mean the board of election commissioners of any city, village or incorporated town in this State in which there now is or hereafter may be a board of election commissioners, and in the provisions of this Act applicable to or within any such city, village or incorporated town; 'legal voter' shall mean a duly registered legal voter."

Section 2 of this Act (J. & A. ¶ 4638) provides for the filing in the office of the "clerk" the petition necessary to cause the proposition of whether the political subdivision shall become anti-saloon territory to be

submitted at an election. Section 4 (J. & A. ¶ 4640), among other things, sets out the form of said petition which is addressed to the "clerk" of such political subdivision. Section 5 (J. & A. ¶ 4641) provides that the "clerk" with whom the petition shall be filed shall give notice of such election in the manner therein provided. Section 6 (J. & A. ¶ 4642) provides that the "clerk" shall cause said proposition to be printed upon the ballots. Section 7. (J. & A. ¶ 4643) is as follows: "The clerk shall record in a well-bound book, to be kept in his office by himself and his successors, the result of the vote upon said proposition and such result may be proved in all courts and in all proceedings by such record or by the official certificate of the clerk, and in cases where such a record or certificate shows that a majority of the legal voters voting upon said proposition voted 'Yes' the same shall be prima facie evidence that the political subdivision to which such vote was applicable has become Anti-Saloon Territory."

The act providing for the creation of boards of election commissioners in cities, towns and villages adopting the act gives them substantially absolute control over all elections within their respective jurisdictions. Under the provisions of the Local Option Act, all the duties imposed upon the clerks of their respective political subdivisions which have not adopted the act creating boards of election commissioners devolve upon the boards of election commissioners where they exist. The election on the proposition of whether the City of Danville shall become anti-saloon territory was called and conducted by the board of election commissioners of that city. The certificate provided for by section 7 of the Local Option Act must be held to mean in this instance one executed by the Board of Election Commissioners unless it can be said that to construe the word "clerk" therein as the "board of election commissioners" would be inconsistent with

the context of the act.   We fail to see where there would be any inconsistency in such construction, but, on the contrary, it would not only be consistent, but be within the clear intention of the act to require such a certificate to be executed by the board of election commissioners.   The certificate of the city clerk was incompetent to prove the fact that the City of Danville was anti-saloon territory, and as there was no other proof of that material fact, the conviction cannot be sustained.

The criticism of the instructions given on behalf of defendant in error are without substantial merit and the instructions as a series presented the law fairly and the jury could not have been misled in regard thereto.   For the error in admitting in evidence the certificate in question, the judgment is reversed and the cause remanded.

*Reversed and remanded.*